UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANGEL L. RODRIGUEZ,

                         Plaintiff,

    v.                                        DECISION & ORDER

ANDREW SAUL, Commissioner of           18-CV-01401 MJP
Social Security,

                         Defendant.

---

## INTRODUCTION

**Pedersen, M.J.** Angel L. Rodriguez ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding that he is no longer disabled and cannot continue to receive Supplemental Security Income benefits ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Consent to Jurisdiction, ECF No. 21.)

Presently before the Court are cross-motions for summary judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF Nos. 16 & 22.) For the reasons stated below, this matter must be remanded for a rehearing.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on April 11, 2007. (R.[1] 223–32.) On December 23, 2009, the Commissioner found Plaintiff disabled as of March 13, 2007, and awarded him SSI benefits. (R. 120–26.) The Commissioner terminated Plaintiff's benefits on January 2, 2015, when the Commissioner's Continuing Disability Review ("CDR")[2] found Plaintiff had experienced medical improvement[3] that would permit him to perform substantial gainful activity. (R. 18–21, 108–09, 136–52.) Plaintiff contested this decision and appeared for a hearing before an Administrative Law Judge ("A.L.J.") on August 8, 2017. (R. 64–107.) On October 31, 2017, the A.L.J. issued a decision confirming the initial finding that Plaintiff was no longer disabled. (R. 15–28.)

In her decision, the A.L.J. followed the required seven-step analysis for evaluating a CDR. 20 C.F.R. §§ 416.994(b)(5)(i)–(vii). Under step one of the analysis, the A.L.J. found that, since January 2, 2015, Plaintiff had "not had an impairment or combination of impairments [that] meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 17.) At step two, the A.L.J. concluded that Plaintiff had experienced medical improvement in his condition. (R. 18.) At step three, the A.L.J. determined that Plaintiff's medical

---

[1] "R" refers to the filed record of proceedings from the Social Security Administration, ECF No. 6.
[2] 20 C.F.R. § 416.994 authorizes the Commissioner to perform a periodic review of claimants' benefits to determine if there has been a medical improvement germane to the ability to work and whether, under a new RFC analysis, the claimant could reenter the national economy. *See also* POMS DI 28001.001.
[3] "Medical improvement" is defined in 20 C.F.R. § 416.994(b)(1)(i) as "any decrease in the medical severity of your impairment(s) which was present the time of the most recent favorable medical decision that you were disabled or continued to be disabled."

improvement was related to his ability to work, increasing his residual functional capacity ("RFC") when compared to the impairment(s) present when the Commissioner found him disabled in 2007. (R. 21–22.) Since the Commissioner determined that Plaintiff had medically improved, the A.L.J. did not need to address step four of the seven step analysis. *See* 20 C.F.R. §§ 416.994(b)(5)(iii)-(iv). At step five, the A.L.J. determined that Plaintiff continued to have "a severe impairment or combination of impairments."[5] (R. 22.) The A.L.J. then noted Plaintiff's lack of past relevant work. (R. 27.) At step six, the A.L.J. determined that as of January 2, 2015, Plaintiff had the following RFC :

> [the] capacity to perform light work as defined in 20 CFR 416.967(b) except he could only occasionally work at unprotected heights, around moving, mechanical parts, in extreme cold, heat humidity or wetness, or in concentrated exposure to dust, odors, fumes, or other pulmonary irritants. (R. 22.) The A.L.J. proceeded to step seven and found that jobs exist in the national and regional economy that Plaintiff could perform.

(R. 27–28.)

Plaintiff timely filed a request for review by the Appeals Council that the Commissioner acknowledged on August 23, 2018. (R. 34–36.) The Appeals Council denied the request for review on October 5, 2018, thereby making the A.L.J.'s decision the final decision of the Commissioner. (R. 1–8.) Plaintiff timely filed this civil action on December 4, 2018, seeking judicial review of the A.L.J.'s decision. (Compl., ECF No. 1.)

---

[5] The A.L.J. found that as of January 2, 2015, Plaintiff had the following severe and non-severe impairments: scoliosis, lumbago, status post lumbar laminectomy, asthma, anxiety, and esophageal reflux disorder, as well as bilateral medial joint space loss, bipolar disorder and mood disorder. (R. 17.)

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). It directs that when considering a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

To determine whether substantial evidence supports the Commissioner's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105–06 (2d

Cir. 2003); *Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo*).

As set forth above, this case involves the Commissioner terminating Plaintiff's extant Social Security benefits. Pursuant to the Act, "[t]he Commissioner may terminate a . . . recipient's benefits if a review reveals substantial evidence that the recipient's condition has improved in a manner relevant to the recipient's ability to work, and that the recipient can now engage in substantial gainful activity." *Daif v. Astrue*, No. 07-CV-5400 (JG), 2008 WL 2622930, at *5 (E.D.N.Y. July 1, 2008); *Williams v. Barnhart*, No. 01 CIV. 353(SAS), 2002 WL 618605, at *4 (S.D.N.Y. Apr. 18, 2002) ("[a]fter a declaration of disability entitling the claimant to DIB and SSI benefits, benefits can be terminated based on a finding that the relevant impairment has ceased, no longer exists[,] or is not disabling.") "In assessing whether or not a medical improvement has occurred, the Commissioner must compare the current medical severity of the impairment with the medical severity of the impairment at the time of the most recent favorable medical decision finding the claimant was disabled." *Daif*, 2008 WL 2622930, at *5 (citing 20 C.F.R. § 416.994(b)(1)(vii)).

In reviewing the CDR to determine whether the claimant remains disabled and able to receive SSI, the A.L.J. is required to utilize a seven-step sequential analysis as follows:

> (1)   whether or not the claimant has an impairment or combination of impairments which meet or equal the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Social Security Regulations;
>
> (2)   if the claimant does not have such an impairment, has there been medical improvement in the claimant's condition (if there has been

medical improvement, the review proceeds to step 3; if there is no decrease in medical severity, there is no medical improvement, and the review proceeds to step 4);

(3)   if the claimant's medical improvement is related to his or her ability to do work, i.e. whether or not there has been an increase in the residual functional capacity [ ] based on the impairment(s) that was present at the time of the most recent favorable medical determination (if medical improvement is not related to ability to work, the review proceeds to step 4; if medical improvement is related to ability to work, the review proceeds to step 5);

(4)   if the claimant was determined to have no medical improvement or if any medical improvement was determined to be unrelated to ability to work, do any of the specified exceptions apply (if none apply, disability will be found to continue; if an exception from the first group of exceptions applies, the review proceeds to step 5; if an exception from the second group of exceptions applies, disability will be found to have ended);

(5)   whether or not the claimant's current impairments, either individually or in combination, are severe (if the RFC assessment in step 3 showed significant limitation in the claimant's ability to do basic work activities, the review proceeds to step 6; if not, the claimant will be found no longer disabled);

(6)   can the claimant still do work that he or she has performed in the past (if so, disability will be found to have ended);

(7)   can the claimant do other work if not able to perform work done in the past (if so, disability will be found to have ended; if not, disability continues.)

*O'Connor v. Astrue*, No. 07-CV-141, 2009 WL 3273887, at *3–4 (W.D.N.Y. Oct. 9, 2009); 20 C.F.R. § 416.994(b)(5)(i)–(vii). "The plaintiff bears the initial burden of showing that the impairment prevents the plaintiff from returning to his or her previous type of employment." *Fears v. Saul*, No. 18-CV-1078, 2020 WL 562681, at *3 (W.D.N.Y. Feb. 5, 2020) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). If the plaintiff meets this burden, the Commissioner then has the burden "to prove

6

the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform." *Id.* (quoting *Berry*, 675 F.2d at 467).

## ANALYSIS

Plaintiff presents three primary arguments with numerous and duplicative sub-arguments for analysis. (Pl.'s Mem. of Law at 3, ECF No. 16-1.) First, Plaintiff asserts that the A.L.J. "improperly concluded that Plaintiff 'medically improved'" within the meaning of 20 C.F.R. § 416.994(b)(1)(i). (*Id.* at 16.) To support this argument, Plaintiff adds that the A.L.J. "selectively ignore[d] evidence that undermine[d] [her] determination . . . by failing to consider the limiting effects of combined conditions, such as Plaintiff's degenerative conditions," and by failing to "consider functional limitations that arise from non-severe impairments." (*Id.* at 17–18.) Plaintiff makes specific contentions about which conditions and medical assessments the A.L.J. failed to consider and concludes that "the RFC since January 2, 2015 is not supported." (*Id.* at 19.) In particular, Plaintiff argues that the conditions and evidence the A.L.J. failed to consider was "later medical objective evidence that supported worsening conditions" that was submitted after the consultative exams were conducted. (*Id.* at 20.)

Plaintiff adds several arguments under the guise of his first issue. Plaintiff argues that "the ALJ may not use consultant findings or hearing officer's findings to conclude that Plaintiff had medical improvement because these opinions did not consider all of Plaintiff's conditions and later medical evidence." (*Id.*) From a discussion of how consultant physicians did not properly consider all of Plaintiff's conditions, Plaintiff then moves on to conclude that "the ALJ improperly used his own

7

opinion" rather than that of a treating physician, specifically, Gregory J. Castiglia, M.D. (*Id.*) Plaintiff thus appears to attack both the idea that his condition improved and the A.L.J.'s RFC within the first issue presented. (*Id.* at 20–21.)

Plaintiff's second issue deals with whether the treating physician rule was traversed by the A.L.J.'s treatment of Caillean McMahon-Tronetti, D.O.'s opinion as Plaintiff asserts that opinion should have been assigned controlling weight. (*Id.* at 21–25.) Plaintiff's third issue deals with the A.L.J.'s reasoning for not according Dr. McMahon-Tronetti's opinion controlling weight, specifically asserting that the A.L.J. failed to develop the record by obtaining additional records from Dr. McMahon-Tronetti's office. (*Id.* at 25–27.)

**The A.L.J. Erred with Respect to Failing to Identify Caillean McMahon-Tronetti, D.O., as a Treating Physician and, Consequently Failing to Engage in the Proper Analysis for Weighing Her Employability Assessment.**

Plaintiff testified that since 2005, he had been receiving mental health treatment at The Resource Center where Dr. McMahon-Tronetti worked. (R. 83–84.) During his August 8, 2017, testimony, Plaintiff also indicated that Dr. McMahon-Tronetti was treating him for mental health issues but that "she has left now." (R. 83.) It is unclear from a review of the record and the A.L.J.'s decision the length of time Dr. McMahon-Tronetti treated Plaintiff, but she at least treated and/or supervised Plaintiff's treatment for five visits over a span of six months.[8] (R. 454–465.)

---

[8] Dr. McMahon-Tronetti's assessment, dated November 8, 2016, indicates that the "Date of Last Examination" of Plaintiff was October 17, 2016. (R. 676.) This suggests that Dr. McMahon-Tronetti had a lengthy treating relationship with Plaintiff.

8

The A.L.J. fails to credit Dr. McMahon-Tronetti as a treating physician under the applicable version of 20 C.F.R. § 416.927(a)(2). Dr. McMahon-Tronetti is a treating source because Plaintiff had frequent visits with her and because the treatments Plaintiff sought from Dr. McMahon-Tronetti were well within her scope of practice as a doctor and psychiatrist. (R. 21; 454–465.) The Court cannot be certain whether, had the A.L.J. credited Dr. McMahon-Tronetti as a treating physician, "little weight" would have been assigned to the November 2016 assessment completed by Dr. McMahon-Tronetti. For this reason, remand is required. *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) ("Because it is not entirely clear what legal standard the ALJ applied [in weighing the opinion of plaintiff's treating physician] . . . we conclude that a remand is necessary in order to allow the ALJ to reweigh the evidence.").

Even if the Court was able to garner from the A.L.J.'s decision that she implicitly treated Dr. McMahon-Tronetti as a treating physician, the A.L.J. still failed to comply with Second Circuit law with respect to the analysis to be followed when assessing a treating physician's opinion. (R. 21.) Given that Dr. McMahon-Tronetti was a treating source, the A.L.J. was required to give Dr. McMahon-Tronetti controlling weight provided her assessment was "well supported" and was "not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).[9] When an A.L.J. does not give controlling weight to a treating physician, the A.L.J. must

---

[9] In 2008, when the Second Circuit decided *Burgess*, the applicable provision was § 404.1527(d)(2). However, at the time Plaintiff filed her claim in 2015, the statute had been amended and the applicable subsection was changed to § 404.1527(c)(2).

"explicitly consider" four factors provided in *Burgess* (the "*Burgess*" factors). *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)) (the four "*Burgess*" factors stated in *Estrella* and earlier in *Burgess* are drawn from 20 C.F.R. § 404.1527(c)(2): "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."). An A.L.J.'s failure to consider each of the *Burgess* factors "explicitly" has been held to require remand where "the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment]." *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2004) (alterations in original.) In such situations, the court is "unable to conclude that the error was harmless and consequently remand" is appropriate so that the A.L.J. can state the reasons for the weight assigned. *Estrella*, 925 F.3d at 96 (citing *Halloran*, 362 F.3d at 33.)

Here the A.L.J. has failed to provide "good reasons" sufficient to avoid an analysis of the *Burgess* factors. The A.L.J. discredited Dr. McMahon-Tronetti's assessment

> because it is not accompanied by supporting treatment notes while being at odds with both the notes that are in the record, as well as the findings and opinions of examining and reviewing sources, and the claimant's admissions concerning his functioning. The record includes reference to the claimant traveling to Puerto Rico for his wedding, and enjoying working with a youth group at his church . . . . Moreover, when seen on March 17, 2015, the claimant's counselor, Ms. Perrin, suggested the claimant's work with a youth group could present a career path, without mention of any mental limitations as an impediment, and the claimant himself suggested only that "medical issues" could be problematic . . .

10

(R. 21.)

With respect to the A.L.J.'s claims that Dr. McMahon-Tronetti's opinion is not accompanied by supporting treatment notes, it is unclear if the A.L.J. is referring to the lack of treatment notes made contemporaneously with the opinion, which are not in the record, or whether she is referring to a lack of any supporting treatment notes from Dr. McMahon-Tronetti, which are in the record. (R. 454–66.) In addition, the A.L.J.'s statement that the opinion is "at odds with . . . the notes in the record," is vague and does not suffice as a "good reason" as she does not cite to any specific notes to support this assertion.

Further, the A.L.J. states that the opinion is also at odds with the "findings and opinions of examining and reviewing sources." (R. 21.) However, given that the A.L.J. failed to treat Dr. McMahon-Tronetti as a treating physician who is generally accorded more weight than one-time consultative examiners, this is also not a good reason for discounting Dr. McMahon-Tronetti's opinion.  Generally, the opinion of a consultative physician, who only examined plaintiff once, should not be accorded the same weight as the opinion of a plaintiff's treating psychotherapist. *Spielberg v. Barnhart,* 367 F.Supp.2d 276, 282–83 (E.D.N.Y. 2005) (holding that an ALJ gave too much weight to a one-time assessment by a consultative physician). This is because "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Cruz v. Sullivan,* 912 F.2d 8, 13 (2d Cir.1992) (citation omitted); *Straughter v. Comm'r of Soc. Sec.,* No. 12-CV-0825 (DAB) (DCF), 2015 WL 6115648,

at *17 (S.D.N.Y. Oct. 16, 2015) (opinion of one-time consultative examiner would need to be "sufficiently substantial" to constitute evidence that could undermine treating physician's opinion) (quoting *Burgess*, 537 F.3d at 128 ). In other words, it is not clear if the A.L.J. would still have accorded the one-time consultative examiner's opinions "great weight" had she treated Dr. McMahon-Tronetti's opinion as one from a treating physician.

Finally, the A.L.J. discounted Dr. McMahon-Tronetti's opinion because it was at odds with Plaintiff's own admissions regarding his functioning. Confusingly, the A.L.J. cites to a treatment note from Plaintiff's mental health counsel, Jennifer Perrin, MSW, dated March 17, 2015, in which Plaintiff indicated that he was working with the youth at his church. (R. 488.) When Ms. Perrin asked Plaintiff if this was a potential career path for him the notes indicate that Plaintiff was "reluctant to think about pursuing a career due to his medical issues." (*Id.*) This note does not appear to be "at odds" with Dr. McMahon-Tronetti's assessment that indicates, for example, that Plaintiff "does not do well in stressful situations," which was expected to last "12+ months," and that notes that Plaintiff is "Moderately Limited" to "Very Limited" in all categories of mental functioning listed on the assessment except for one involving hygiene and grooming. (R. 676.) The Second Circuit has noted that it "'do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion.'" *Morgan v. Colvin*, 592 Fed. App'x. 49, 50 (2d Cir. 2015) (summary order), quoting *Halloran*, 362 F.3d at 33; *accord Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). In sum, the Court is not

12

persuaded that the A.L.J. provided the requisite good reasons to avoid engaging in an analysis of the *Burgess* factors.

The first *Burgess* factor requires the A.L.J. to consider "the frequen[cy], length, nature, and extent of treatment." *Estrella*, 925 F.3d at 95 (quoting *Selian*, 708 F.3d at 418. Here, the A.L.J. failed to comply with the first *Burgess* factor as she did not address the frequency, length, nature, and extent of the treating relationship between Plaintiff and Dr. McMahon-Tronetti. Indeed, the A.L.J. did not even acknowledge the treating relationship between the doctor and Plaintiff, addressing only the one assessment completed by Dr. McMahon-Tronetti in November 2016. (R. 21.) The A.L.J.'s failure to apply the first *Burgess* factor leaves this Court unable to determine if the A.L.J. "conscientiously applied the substance of the treating physician rule." *Gualano v. Comm'r of Soc. Sec*, 415 F. Supp. 3d 353, 361 (W.D.N.Y. 2019) (citing *Jasen v. Comm'r of Soc. Sec.*, No. 16-CV-6153P, 2017 WL 3722454, *11 (W.D.N.Y. 2017); *Alexander v. Comm'r of Soc. Sec.*, No. 14-CV-0039, 2014 WL 7392112, *6 (D. Vt. 2014) (holding that remand is required where the "[t]he court cannot be confident that [Plaintiff] received the treating physician rule's procedural advantages, nor can it conclude that the substance of the treating physician rule was not traversed.") (internal quotations and brackets omitted.)

The foregoing errors require reversal and remand. Since remand is required, the Court need not address the other arguments advanced by Plaintiff in support of his motion for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings (ECF No. 16) and denies the Commissioner's motion for judgment on the pleadings (ECF No. 22). Pursuant to the fourth sentence of 42 U.S.C. § 405(g), this matter is remanded to the Commissioner for a hearing. The Court directs the Clerk of the Court to enter judgment in favor of Plaintiff and close this case.

IT IS SO ORDERED.

Dated:   September 1, 2020              /s/ Mark W. Pedersen
         Rochester, New York            MARK. W. PEDERSEN
                                        United States Magistrate Judge